IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

USINE A GLACE NATIONALE, S.A.
Plaintiff,

v.

CIVIL NO. 97-1732 (JAG)

PEPSI-COLA MARKETING
CORPORATION OF PUERTO RICO, et al
Defendants

## REPORT AND RECOMMENDATION

On May 7, 1997, plaintiff Usine A Glacé National, S.A. (hereinafter "Usine"), filed the present lawsuit under 28 U.S.C. § 1332, alleging damages for breach of contract. (See Docket No. 1). Defendants PepsiCo, Inc. and Pepsi Cola Marketing Corporation of Puerto Rico (hereinafter collectively referred to as "Pepsi"), filed a motion for summary judgement on January 25, 2000 (see Docket No. 32, Joint Motion Submitting Dispositive Motions), which plaintiff opposed. Pepsi filed a reply to plaintiff's opposition to their motion for summary judgment on July 13, 2000. (See Docket No. 32). The matter was referred for report and recommendation on June 29, 2001. (See Docket No. 34). The parties had further opportunity to present their arguments in support of their respective positions relative to the summary judgment motion at a hearing held on July 20, 2001.

## SUMMARY JUDGMENT

Rule 56 (c), of the Federal Rules of Civil Procedure, sets forth the standard for ruling on





CIVIL 97-1732 (JAG)                                          2

summary judgment motions: The judgment sought shall be rendered forthwith if the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. The critical question in granting or denying a motion for summary judgment is whether a genuine issue of material fact exists. A genuine material issue of fact exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. Morris v. Government Dev. Bank of Puerto Rico, 27 F. 3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994).

In order to aid the Court in the daunting task of searching for genuine issues of material fact in the record, the District of Puerto Rico adopted Local Rule 311.12. See, e.g., Corrada Betances v. Sea-Land Serv., Inc., 248 F. 3d 40, 43-44 (1st Cir. 2001); Morales v. Orssleff's EFTE, 246 F.3d 32, 33-35 (1st Cir.2001); Ruiz Rivera v. Riley, 209 F. 3d 24, 27-28 (1st Cir. 200). This rule, requires, in relevant part, that a party moving for summary judgment submit, in support of its motion, "a separate, short concise statement of material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the record."

In accordance with the summary judgment standard of review, the Court will outline the relevant facts in the light most favorable to plaintiff Usine based on the 311.12 statements submitted by the parties.

### FACTUAL BACKGROUND

On January 31, 1963, plaintiff Usine executed a Territory Agreement with the 7-Up Company, whereby plaintiff was granted the bottling privileges of 7-up in the Republic of Haiti.

AO 72A
(Rev.8/82)

CIVIL 97-1732 (JAG)                                3

(See Docket 32, Defendants' Statement of Uncontested Facts, Exhibit 1). At the time of this agreement, 7-Up's principal place of business was St. Louis, Missouri, while plaintiff's principal place of business was Port-au-Prince, Haiti. The 1963 Territory Agreement contained a choice of law clause stating in relevant part: "This agreement shall be interpreted in accordance with the laws of the State of Missouri, U.S.A. . ." (See Defendants' Statement of Uncontested Facts, Exhibit 1, ¶ 18).  Thereafter, on February 25, 1977, a Trademark License Agreement was signed between both parties providing plaintiff the non-exclusive use of 7-Up's trademarks. (See Defendants' Statement of Uncontested Facts, Exhibit 2). At the time of the 1977 Trademark License Agreement, which contained no choice of law provision, the parties' principal places of business remained the same.

It is undisputed that 7-Up International was purchased by defendant Pepsi sometime in 1986. Plaintiff contends that by the 1990's, the Pepsi regional office in Puerto Rico, was overseeing Pepsi's interests in Haiti. (See Plaintiff's Statement of Uncontested Facts, Exhibit 10).

In its complaint, Plaintiff Usine claims that it entered into verbal agreements[1] with defendant Pepsi whereby plaintiff Usine was to construct a new plant in Haiti, with better facilities and technology, for the purposes of bottling Pepsi-Cola. (See Docket Nos. 1, ¶¶ 10, 11, 12, 13, 14, 15, 25 and 27). Defendant Pepsi, in turn, denies that such verbal agreements ever existed.

In 1991, a Coup d'Etat occurred in Haiti, in which the military forces took over the government. It appears that as a result of the country's political and social instability, plaintiff's bottling operations of 7-Up were closed down for security reasons soon after the Coup. (See Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Exhibit 1, pg. 146) . At that time, the United States placed an embargo on Haiti, and no commerce was allowed between the

---

[1] The parties refer to these so called verbal contracts as "the new plant agreement" and the "equipment grant agreement".

CIVIL 97-1732 (JAG)                                    4

two countries. As a result of the embargo, the syrup used as raw material for plaintiff Usine's production of 7-Up, which was elaborated in Puerto Rico, could not be exported into Haiti. (See Reply to Plaintiff's Opposition to Defendants' Summary Judgment Motion, Exhibit 1, pg. 148). It is undisputed that plaintiff Usine's bottling plant never re-opened.

On December 12, 1991, a 7-Up representative form the Bermuda office, mailed a letter to plaintiff Usine, notifying the termination of both written contracts (the 1963 Territory and 1977 Trademarks Agreements) effective on February 12, 1992 (two months after the notification). (See Docket No. 1, ¶ 19; Defendants' Statement of Uncontested Facts, Exhibit 3).

On March 30, 1992, plaintiff Usine's plant and machinery were sold at public auction (Docket 1, ¶ 23). Three months later, on June 2, 1992, Canada Dry Corporation Ltd., which is not a party to this litigation, canceled its agreement with plaintiff after learning that plaintiff's bottling facilities had been sold at public auction.

## DISCUSSION

*I. The 1963 and 1977 written contracts*

In its motion for summary judgement, Pepsi asserts that plaintiff Usine's breach of contract claim is time-barred. It is undisputed that the Territory Agreement, entered by both parties in 1963, contained a choice of law clause. It is Pepsi's contention that the terms and conditions of the written agreements (the 1963 & 1977 agreements) should be interpreted in accordance with the laws of the State of Missouri, as mandated by the choice of law clause in the 1963 agreement. Defendant Pepsi claims that Usine's breach of contract claim is time barred given that under Missouri law[2] the

---

[2] Section 516.120 of the Revised Statutes of the State of Missouri, §516.120 R.S. Mo. (2001), provides that all actions upon contracts can be commenced within five (5) years after they

CIVIL 97-1732 (JAG)                                             5

statutory period for contract claims is five (5) years, and plaintiff filed suit on May 7, 1997 (five years and three months after the accrual of plaintiff's cause of action).³

Plaintiff, on the other hand, contends that the breach of contract claim should be governed by Puerto Rico law, which has a fifteen year (15) statute of limitations period for such claims. Plaintiff Usine's argument is twofold: first, plaintiff contends that the 1963 Territory Agreement was superceded by the 1977 Trademark License Agreement (which contained no choice of law clause)⁴; and second, given the absence of a choice of law clause, the dominant contacts rule should apply, resulting in the applicability of Puerto Rico law. In an effort to support this argument, plaintiff Usine brings forth proof of a myriad of alleged contacts that defendant Pepsi has with Puerto Rico.

Plaintiff's argument is not supported by the evidence of record. A look at both agreements reveals that rather than supersede each other, the second agreement supplements the first. The Territory Agreement of 1963 provided plaintiff Usine with bottling privileges, while the 1977 Trademark Agreement allowed Usine to use 7-Up's trademarks. Clause nine (9) of the 1963 Territory Agreement, states in relevant part, "this agreement may be supplemented by a trademark license agreement. . .". In other words, the parties (which bargained and signed an agreement in

---

accrue. The Missouri Court of Appeals has stated that "the statue of limitations begins to run once the fact of damage is capable of ascertainment, even though the amount of damage is not yet ascertainable." See Rose v. City of Riverside, 827 S.W.2d 737, 738 (Mo. App. 1992) (citing Knipmeyer v. Spirtas, 750 S.W.2d 489, 490 (Mo. App. 1988). See also Zero Mfg. Co. v. Hirsh, 743 S.W.2d 439 (Mo. App. 1987).

³       In making this calculation, Pepsi refers to February 12, 1992 (the date of the actual termination of the agreement) as the onset date for the calculating the five year statute of limitations period.

⁴       In paragraph seven (7) of the complaint, however, plaintiff admits that the choice of law clause [of Missouri] was not changed by the 1977 contract.

AO 72A
(Rev.8/82)

CIVIL 97-1732 (JAG)                                6

1963) had contemplated the possibility that said agreement would need to be supplemented with a Trademark agreement at some point in the future. The fact that the 1977 Trademark Agreement lacked an independent choice of law clause in no way invalidates the choice of law clause contained in the original agreement of 1963.

As a general rule, parties are permitted to agree that the law of a particular jurisdiction will govern their transaction. When, as here, the parties have included a choice-of-law clause in their contract, the court is required to enforce it as long as the jurisdiction selected has a substantial connection with the contract and the clause does not collide with fundamental considerations of public policy of the forum. Walborg Corp. v. Tribunal Superior, 104 D.P.R. 184, 192 (1975) rev'd on other grounds, World Films, Inc., et al. v. Paramount Pictures, Corp. et al., 125 D.P.R. 352 (1990); Unisys Puerto Rico, Inc. v. Ramallo Brothers Printing, Inc., 128 D.P.R. 842 (1991).[5]

In this case, the parties chose to have Missouri law govern their agreement. Missouri, at that time, was the principal place of business of one of the parties (the 7-Up Company), and as such had a logical and substantial connection with one of the parties.[6] In view of the aforementioned, this Court finds the Missouri choice of law clause in the 1963 agreement valid, and applicable to the supplemental agreement of 1977. Therefore, whatever claims plaintiff Usine might have in relation to the 1963 and 1977 written agreements are time-barred in view of the applicable statutory period

---

[5] In a diversity case, such as this one, the federal court must apply the choice of law of the forum state. Puerto Rico courts do not hesitate to rely upon the Restatement of Conflicts of Law, and generally find choice of law clauses valid when the selected jurisdiction has substantial contacts with the contracts. See Restatement (Second) of Conflicts of Law § 187 (1988); see, e.g., Shelley v. Trafalgar House Public Limited Co., 918 F.Supp. 515, 521 (D.P.R. 1996).

[6] As the party opposing the applicability of the choice-of-law provision, Usine has the burden of establishing the alleged 'invalidity' or 'unreasonableness' of said provision. Usine has failed to set forth proof that the application of the law of Missouri would in any way collide with the fundamental considerations of public policy of this forum.

CIVIL 97-1732 (JAG)                                              7

of five (5) years.[7]

## II. *The alleged verbal agreements*

There is ample evidence in the record suggesting that the parties might have entered into a verbal agreement after Pepsi acquired 7-Up in the late eighties and early nineties. Plaintiff Usine refers to these agreements as "the new plant agreement" and the "equipment grant agreement". In its motion for summary judgment, defendant Pepsi makes reference only to the written contracts of 1963 and 1977 discussed in the previous section.

In its response to plaintiff's opposition, Pepsi denies the existence of any verbal agreements between the parties. Plaintiff, however, has set forth sufficient facts to support its contention that a verbal agreement existed between the parties. The depositions of both, the plaintiff and the Pepsi executives, viewed in the light most favorable to the nonmoving party, show that a genuine issue of material fact exists as to wether or not Pepsi and Usine entered into a valid verbal contract.

The court is cognizant of the fact that an issue remains as to what is the controlling law if in fact a valid agreement between Usine and Pepsi exists. A federal court sitting in a diversity case must apply the choice of law rules of the forum state. New Ponce Shopping Center v. Integrand Assurance Co., 86 F.3d 265, 267 (1st Cir. 1996)(citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). See also American Title Ins.Co. v. EastWest Fin. Corp., 959 F.2d 345, 348 (1st Cir. 1998). In Puerto Rico, the forum jurisdiction, the appropriate legal framework for a choice

---

[7] In an effort to allege that its claim is not time-barred, Usine contends that the five (5) year-time period should start running not when 7-Up's agreements were terminated on February 12, 1992, but when Canada Dry cancelled its agreement on June 2, 1992. This argument fails. Plaintiff has not established what relationship, if any, exists between Canada Dry and 7-Up. Even though the cancellation of the Canada Dry contract might be relevant in determining the damages suffered by Usine as a result of the alleged breach of contract, it has no relevance whatsoever as to the issue of whether the claim is time-barred or not.

AO 72A
(Rev.8/82)

CIVIL 97-1732 (JAG)                                    8

of law analysis in the context of a contract suit is the "dominant or significant contacts" test. See A.M. Capen's Co. v. American Trading & Prod. Corp., 74 F.3d 317, 320 (1st Cir. 1996); In re San Juan Dupont Plaza Hotel Fire Litig., 45 F.3d 569, 576 (1st Cir. 1995). Under said test, the laws of the jurisdiction with most significant contacts to the disputed issues will apply. A.M. Capen's Co. v. American Trading & Prod. Corp., 74 F.3d at 320.

In an effort to establish the applicability of Puerto Rico's fifteen-year statutory period to its breach of contract claim, plaintiff Usine brought forth some proof as to contacts that the parties had with Puerto Rico. However, the analysis of said contacts was made in the context of the 1963 and 1977 written contracts, as opposed to the issue of which law controlled the existence of the alleged verbal contract between Usine and Pepsi.

## CONCLUSION

In view of the aforementioned, the Court recommends that defendant Pepsi's motion for summary judgment be **GRANTED in part and DENIED in part.** The motion should be **GRANTED** as to the breach of contract claims of the 1963 and 1977 written agreements, given that said agreements are time-barred under Missouri law. An issue remains as to wether or not a verbal agreement exists between Pepsi and Usine, and what is the applicable law of that agreement.[8]

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further

---

[8] The Court may also have to determine whether the District of Puerto Rico is the proper venue for trying said claim. See 28 U.S.C. §1412.

CIVIL 97-1732 (JAG)                              9

appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F. 2d 22, 30/31 (1st Cir. 1992); Paterson-Leitch v. Massachusetts Elec., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health and Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 720 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F. 2d 376, 378-379 (1st Cir. 1982); Park Motor Mart, Inc. Ford Motor Co., 616 F. 2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 14th day of August, 2001.

GUSTAVO A. GELPÍ
United States Magistrate Judge