IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

USINE A GLACE NATIONALE,
S.A.

    **Plaintiff,**

    v.

PEPSI COLA MARKETING CORP.,
et al.

    **Defendants**

CIVIL NO. 97-1732(JAG)

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

Pending before the Court are plaintiff's Usine A Glace Nationale, S.A. ("Usine") and defendants's Pepsico., Inc. and Pepsi Cola Marketing Corporation of Puerto Rico (collectively, "Pepsi") objections to Magistrate-Judge Gustavo Gelpí's report and recommendation. (Docket Nos. 37, 38, 39.) Magistrate-Judge Gelpí concluded that Usine's breach of contract claim was barred by the applicable statue of limitations. Id. at 4-7. He further concluded that Usine had proffered enough evidence to survive summary judgment on its claim that the parties had entered into, and Pepsi later breached, two oral agreements in the late 1980s. Id. at 7-8. For the reasons set forth below, the Court adopts

1

the report and recommendation in its entirety.

**FACTUAL BACKGROUND**

In 1963, Usine entered into a contract with the 7-Up Company ("7-Up"), whereby Usine was awarded the right to bottle the 7-Up beverage in the Republic of Haiti (the "Territory Agreement"). At the time, 7-Up's principal place of business was in Missouri. Usine's principal place of business was in Haiti. The 1963 Territory Agreement contained a choice of law clause, which states in relevant part that the contract "shall be interpreted in accordance with the laws of the State of Missouri ... ." (Docket No. 32, Exh. 1, ¶ 18.)

In 1977, Usine and 7-Up entered into a Trademark License Agreement, which provided Usine the non-exclusive use of 7-Up's trademarks. The 1977 Agreement contained no choice of law provision. In 1986, Pepsi purchased 7-Up. Usine contends that by the 1990s, the Pepsi regional office in Puerto Rico was overseeing Pepsi's interests in Haiti.

Usine further alleged (although it never presented it as a separate claim) that in the 1980s it entered into certain oral agreements with Pepsi which called for Usine to build a new bottling plant in Haiti, with improved facilities and technology, to bottle the Pepsi-Cola beverage in the country. Pepsi

vehemently denies the existence of any such agreements.

In 1991, Haiti experienced a coup d'etat, and the military took over the government. Apparently as a result of the ensuing political instability, Usine's 7-Up bottling operations were closed down for security reasons shortly thereafter. The United States then placed an embargo on Haiti, which prevented any commerce between the two countries from taking place. That meant that the syrup used as raw material for Usine's production of 7-Up in Puerto Rico could not be exported into Haiti. Usine's 7-Up bottling plant never reopened.

In December, 1991, 7-Up informed Usine that it would cancel the 1963 Territorial Agreement and the 1977 Agreement effective February 12, 1992. One month later, in March, 1992, Usine's plant and machinery were sold at public auction. In June, 1992, Canada Dry Corporation, Ltd., which is not a party to this litigation, canceled an agreement it had with Usine, because Usine's bottling plant had been publicly auctioned.

On May 7, 1997, Usine brought this action. After the parties filed briefs on Pepsi's motion for summary judgment, the Court referred the matter to Magistrate-Judge Gelpí, whose report and recommendation concluded that Usine's claim that Pepsi breached the 1963 and 1977 agreements was barred by the five-year

statute of limitations applicable to the contract, pursuant to Missouri law. With respect to Usine's contention that it entered into verbal agreements with Pepsi in the late 1980s, the report and recommendation found that Usine had proffered sufficient evidence to survive summary judgment, and that "a genuine issue of material fact exists as to whether or not Pepsi and Usine entered into a valid verbal contract." (Docket No. 37 at 7.)

Both Usine and Pepsi timely filed objections to the report and recommendation.

## DISCUSSION

A.  <u>Standard of Review</u>

A district court may, on its own motion, refer a pending matter to a United States Magistrate-Judge for a report and recommendation. <u>See</u> 28 U.S.C. §636(b)(1)(B); Fed.R.Civ.P. 72(b); Rule 503, Local Rules, District of Puerto Rico. Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 510.2, the adversely affected party may contest the report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. 28 U.S.C. § 636(b)(1). Since both parties have filed timely objections to the report and recommendation, the Court shall make a *de novo* determination of those portions of the report or specified proposed findings or

4

recommendations to which objection is made. See <u>United States v. Raddatz</u>, 447 U.S. 667, 673 (1980); <u>Lopez v. Chater</u>, 8 F. Supp.2d 152, 154 (D.P.R. 1998).

B.   <u>Usine's Objections</u>

Usine objects to the report and recommendation's conclusion that its breach of contact claim against Pepsi is time-barred by arguing that "[e]ssentially, the 1963 and 1977 contracts terminated, as a matter of fact, in 1986 when Pepsi purchased 7-Up." (Docket No. 39 at 2.) Since the post-1986 relationship between Pepsi and Usine was controlled from Puerto Rico, and not Missouri, Usine reasons that Pepsi "waived any relationship with the State of Missouri" when they "submitted themselves to the laws of Puerto Rico" with their actions. <u>Id.</u> The Court disagrees.

Usine contends that the Court should follow the "most significant contacts" test for contract actions enunciated, <u>inter alia</u>, in <u>A.M. Capen's Co. v. American Trading and Prods. Corp.</u>, 74 F.3d 317 (1st Cir. 1996). That case, however, expressly relies on the Restatement (Second) of Conflict of Laws § 188, which provides a list of the contacts to be taken into account in a contract action "<u>absent a contractual choice of law</u>." <u>Id.</u> at

5

320 (emphasis supplied). Here, by contrast, there is such a contractual provision: the parties to the 1963 Territorial Agreements executed an arms-length transaction that contained a choice-of-law clause providing that Missouri law would govern any disputes arising out of the agreements.[1] (See Pepsi's Statement of Uncontested Facts, Exh. 1 at ¶ 18.) Puerto Rico courts generally find choice-of-law clauses valid. See, e.g., Shelley v. Trafalgar House Public Ltd. Co., 918 F. Supp. 515, 521 (D.P.R. 1996)(citing cases). There is nothing in the choice-of-law clause at issue here that would call its validity into question, as Missouri, the "chosen state" had a "substantial relationship" to the parties and the transaction at the time the contract was signed. Id.

Missouri, it is undisputed, has a five year statute of limitations for contract actions, which begins to run "once the fact of the damage is capable of ascertainment, even though the amount of damage is not yet ascertainable." Rose v. City of Riverside, 827 S.W.2d 737, 738 (Mo. App. 1992)(citing Knipmeyer v. Spirtas, 750 S.W.2d 489, 490 (Mo. App. 1988)). Under the most

---

[1] The Magistrate-Judge concluded, and Usine does not contest, that the 1977 Agreement supplemented the 1963 Territorial Agreement.

generous interpretation in Usine's favor, the statute of limitations began to run on February 12, 1992, the effective date of termination.[2] Since it filed suit on May 7, 1997, the breach of contract claim under the 1963 and 1977 Agreements is barred by the five-year statute of limitations, and must therefore be dismissed.[3] Accordingly, the Court <u>adopts</u> the Magistrate-Judge's recommendation, and <u>grants</u> Pepsi's motion for summary judgment on Usine's breach of contract claim as to the 1963 and 1977 claims.

C.  <u>Pepsi's Objections</u>

Pepsi objects to the report and recommendation on rather technical grounds. Pepsi asks the Court to "amend" the report and recommendation to reflect that Usine raised the issue of the existence of an "equipment grant agreement" in its opposition to Pepsi's summary judgment motion. Pepsi further asks the Court to modify the report and recommendation to reflect that Pepsi opposed any (putative) attempt by Usine to amend the Complaint to include allegations about the alleged "equipment grant

---

[2]Usine knew of Pepsi's intention to cancel the contracts as early as December 12, 1991. (Docket No. 37 at 4.)

[3]Usine's "Canada Dry" argument merits little discussion. Under the Missouri statute of limitations, it would be impossible to set the date on which the statute begins to run at any point after February 12, 1992, the date on which the damage became "capable of ascertainment."

7

agreement." (Docket No. 38 at 3.)

Pepsi does not specifically object, however, to the report and recommendation's <u>substantive</u> finding: namely, that Usine "had set forth sufficient facts to support its contention that a verbal agreement existed between the parties." (Docket No. 37 at 7.) Since Pepsi has failed to object specifically to the report and recommendation's finding on this score, the Court will adopt it. The Court shall amend the report and recommendation to reflect that Usine, not Pepsi, first raised this issue, and that Pepsi opposed Usine's attempt to amend its Complaint. Such an amendment, does not help Pepsi here: it was required to specifically object to the Magistrate's rulings that suggested that Usine <u>has</u> a colorable breach of contract claim on the alleged oral agreements. See, e.g., Docket No. 37 at 7 ("[t]here is ample evidence in the record suggesting that the parties might have entered into a verbal agreement after Pepsi acquired 7-Up in the late eighties and early nineties"). Pepsi, however, has not done so.

Usine may amend its Complaint (subject to the limitations stemming from this Court's dismissal of its principal breach of contract claim) to add its breach of contract claim regarding its alleged oral agreement with Pepsi.

## CONCLUSION

For the foregoing reasons, the Court <u>adopts</u> the Magistrate-Judge's report and recommendation in its entirety. Partial judgment shall enter dismissing Usine's breach of contract claim against Pepsi stemming from the 1963 and 1977 Agreements. Usine has 10 days from the date of this order to file an Amended Complaint that includes its claim that it entered into an oral agreement with Pepsi in the 1980s, and that Pepsi subsequently breached its terms. Pepsi shall file its Answer within 10 days of receiving Usine's Amended Complaint. A Trial Scheduling Order setting forth a Pre-Trial and Settlement Conference date, as well as a Trial date, shall issue along with this motion.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 7th day of May, 2002.

_____
JAY A. GARCIA-GREGORY
U.S. District Judge